





Mother Raguel Marie Bizarretty Bey ex-relatione: **HAZEL M. CAMARGO**,
**BETTER ME FOODS, PRODUCTS AND SERVICES, LLC,**
Complainant(s),

vs.

CASE NO.: 8:23-CV-973-WFJ-TGW

**BAY RIDERS WATERSPORTS, LLC,**
**TAMPA SANDBOX FOOD COURT, LLC,**
**KHARI EMBERY**
**DEREK NOBLES also known as DEREK BORGHINI**
Defendant(s).

**COMES HERE NOW,** Mother Raguel Marie Bizarretty Bey, upon the information of and authority in fact for **HAZEL MARIA CAMARGO** [Trade Name / Estate], a Freeholder by blood and native American aborigine, Moor / Moorish – American national exercising treaty rights to secure justice and relief for the following unlawful actions committed against me and my person by the defendant(s) named herein:

## I. COMPLAINT

1. Cause of action (COA) for theft and or exploitation.
2. Advocacy of illegal conduct by defendants.
3. Cause of action for breach of covenant of quiet enjoyment of leased property.
4. Cause of Action for false advertising and or making misleading statements.
5. Cause of action for retaliation by landlord.
6. Cause of action for deprivation of rights under the color of law.

## II. JURISDICTION

7. **Title 18 United States Code 241** – Conspiracy against rights.
8. **Title 18 U.S. Code § 245** – Federally protected activities.
9. **Title 18 United States Code 242** – Deprivation of rights under the color of law.
10. **Title 28 United States Code 1331** – Federal question.
11. **Bill of Rights, Amendment 1**, Right of the people to peaceably assemble / petition the government for a redress of grievances.

Page 1 of 13

Cause of action for relief from conspiracy against liberties and the right to freedom of industry absent being compelled to enter into a contract for services under the color of law and contrary to treaty law and other international agreements.

IFP

12. **Bill of Rights, Amendment 7**, Common law suits and amount in controversy is above $20.
13. **Bill of Rights, Amendment 9**, Enumeration of certain rights shall not be construed to deny / disparage others retained by the people.
14. **United Nations Human Rights Treaty Article 8 Section 2(b)** – Right to redress for attempts to dispossess resources.
15. **United Nations Human Rights Treaty Article 9** – Indigenous peoples and individuals have the right to belong to an indigenous community or nation…
16. **United Nations Human Rights Treaty Article 11** – Right to revitalize culture and States shall provide redress through effective mechanisms, which may include restitution…
17. **1787 Organic Constitution for the United States of America, Articles I, III, IV & VI.**
18. **1787 – 1836 Treaty United States of America – Moroccan Empire. Article 6.** If any Moor shall bring citizens of the United States or their effects to His Majesty, the Citizens shall immediately be set at liberty and the effects restored and in like manner, if any Moor not a Subject of these Dominions, shall make prize of any of the Citizens of America or their Effects, and bring them into any of the Ports of His Majesty, they shall be immediately released as they will then be considered as under His Majesty's Protection.
19. **1787 – 1836 Treaty United States of America – Moroccan Empire. Article 20.** If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.
20. **1787 – 1836 Treaty United States of America – Moroccan Empire. Article 21.** If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the trial, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.

### III.   PARTIES TO THE MATTER

21. **BETTER ME FOODS, PRODUCTS AND SERVICES, LLC,** a Moorish vessel and Corporation, a fictitious entity established by treaty and religious right, organized under and regulated by the laws of state of Florida and the United States, in accord with said treaties and international agreements.
22. **Mother Raguel Marie Bizarretty Bey** formerly known as / doing business as **HAZEL MARIA CAMARGO**, a Moorish – American / Moor, American aborigine, a Primordial, Divine Being of the human race, that does not consent to being mis-labeled negro, black, colored, Indian, Hispanic, Latino, African-American, etc. for any purposes as it does not

represent or elude to my actual ancestral rights under tribal and treaty law.[1] See title 26 U.S.C. 641(b)1.

23. **TAMPA SANDBOX FOOD COURT, LLC**, a Corporation, a fictitious entity organized under and regulated by the laws of state of Florida and the United States and within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States.

24. **BAY RIDERS WATERSPORTS, LLC**, a Corporation, a fictitious entity organized under and regulated by the laws of state of Florida and the United States and within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United State and is the agent in fact for TAMPA SANDBOX FOOD COURT, LLC.

25. **DEREK NOBLES**, a 14th Amendment citizen and or US Person / domestic trust under the laws of the United States and within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States.

26. **KHARI EMBERY**, a 14th Amendment citizen and or US Person / domestic trust under the laws of the United States and within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States.

### IV.    STATEMENT OF FACTS

27. On or before 11/16/2022, defendant(s) had a listing on social media that advertised as follows: "WATERFRONT SPACE LEASE $1,000.00"…in the advertisement the defendant(s) state that they have a space for food utility trailer companies and the water and light are included and that rent may be adjusted depending upon trailer size. This listing is still present as of 04/07/2023. **See Exhibit B as evidence and proof that defendant(s) did advertise to plaintiff(s) and others that the water and lights are included in the water front space for lease for $1,000.00 / one-thousand dollars and zero cents.**

28. On 11/16/2022 the defendant(s) did text plaintiff that because of her trailer size the rent was $1,300.00, with lights and water included. **See Exhibit B – 1 as evidence and proof that defendant(s) admission that they would cross market according to the agreement and that the $1,300.00/thirteen-hundred dollars and zero cents for the rent was because of the size of plaintiff's trailer even though other trucks of various size are paying the same amount.**

29. On 11/16/2022, defendant, Derek Nobles, did in fact receive products from plaintiff as evidenced by the conversations and the voided invoice #0000068. **See Exhibits H and H – 1.**

30. On 11/16/2022, defendant(s), Derek Nobles, assured and admits to plaintiff(s) that everything[2] on the lot would be hooked up and ready to go by December 1st when he presented the lease agreement and affixed his seal thereto. **See Exhibit A – Schedule 1 as evidence and proof that defendant(s) altered the lease from the start.**

---

[1] See the Colorado Trade Name Filing, et al. tribal documents, which are supported by the United Nations treaties, specifically the Declaration on the Rights of Indigenous Peoples, signed onto by the United States in 2010, and the Full faith and Credit granted the acts and records of the several states. **See Exhibit M.**

[2] Water, utilities, waste water / sewage, grease trap, et al. other items required to be in place in order to legally be opened according Code enforcement policy.

31. Per Schedule 1 of FOOD TRUCK GROUND LEASE AGREEMENT, defendant(s) as the Lessors consented to a modification of agreement that waived the deposit at signing. **See Exhibit A as evidence and proof of the modification.**
32. On 11/18/2022, plaintiff and defendant did consensually enter into a contract styled a FOOD TRUCK GROUND LEASE AGREEMENT for 6 months. **See Exhibit A as evidence and proof of the agreement between the parties to this matter.**
33. On 11/21/2022 and 11/22/2022, defendant, Derek Nobles, received alerts by text and email about an invoice that needed to be satisfied. **See Exhibit H as evidence and proof of invoicing.**
34. On 11/22/2022 at 2:40 PM, defendant(s), Derek Nobles, replied by text as follows: *"Lol we talking about 60 dollars lol. I just cut you a deal on moving in an we talking about 60 dollars lol ill make sure its paid today no worries. I guess when you offered I should have know its for a price. Like I said it will paid today no worries. Thank you. I told you my cfo handles that stuff he's been busy. Sorry for the delay."* **See Exhibit(s) H – 1 and H – 2 as evidence and proof that defendant(s) had purchased products from plaintiff and therefore had knowledge of plaintiff(s) services.**
35. On 11/28/2022 at 3:59 PM, defendant(s) created and allowed all vendors to access a group chat through WHATSAPP. **See Exhibit C as evidence and proof of plaintiff(s) originally being a part of the group chat.**
36. The name of the group chat is TAMP SANDBOX FOOD COURT. **See the heading in the text image in Exhibit C as evidence and proof.**
37. According to records in custody of the Secretary of the State for State of Florida the defendant(s) are the agents and or authorized representatives for TAMPA SANDBOX FOOD COURT, LLC. **See Exhibit G as evidence and proof that BAY RIDERS WATER SPORTS LLC is the agent for TAMPA SANDBOX FOOD COURT LLC and Derek Nobles, Khari Embery Jr, and Khari Embery Sr. are officers / directors for the same TAMPA SANDBOX FOOD COURT LLC.**
38. On 12/01/2022, Derek asked everyone in the group chat to buy picnic tables at around $150 each, buy port a potties, and grey-water because the vendors are involved in food service and that he is only required to provide clean water and electricity. **See Exhibit C – 1 as evidence and proof that defendant(s) did not communicate to plaintiff(s) and other vendors that they lacked the capacity to collect and dispose of used oil/grease, dirty water, and trash.**
39. On 12/01/2023, plaintiff was asked by Derek to change the main outlet to connect truck to electricity and he (Derek) partly completed the job and plaintiff was asked to finish what was started. **See Exhibit H – 3 as evidence and proof that plaintiff(s) suffered from defendant(s) misrepresentation of being prepared to host food trucks.**
40. On 12/02/2022 he (Khari) says start adding $50.00 to the rent for internet, trash, and waste water. **See Exhibit C – 2 as evidence and proof that defendant(s) were / are charging the vendors for items that are required for them (defendant(s)) to operate a "food court".**
41. On 12/02/2022 at 5:17 PM, defendant(s), Derek Nobles, changed the price for the tables from $150.00 to $175.00 in the group chat. **See Exhibit C – 3 as evidence that**

defendant(s) were not prepared to operate a food court that would host vendors and their customers for eating and that the prices for the preferred tables were changed by the defendant(s).
42. On 12/04/2023, during plaintiff's soft opening orders were taking longer than what they should because the electrical breakers kept having to be reset.
43. On 12/24/2023 at 6:10 PM, defendant(s), Derek Nobles, demanded that all of the vendors take their own trash every night and stated that he / they are not trash collectors. **See Exhibit C – 4 as evidence and proof that the food court has not the ability to dispose of trash for eating customers prior to soliciting to vendors an opportunity to lease a space in the food court.**
44. On 12/24/2023 at 6:45 PM, another vendor questioned Derek about who is responsible for changing the trash outside of the trucks, because everyone of the vendors takes their own trash home. **See Exhibit C – 4 as proof of the same.**
45. On 12/24/2023 at 6:52 PM, defendant(s), Khari, answered and says that each food truck should have their own outside trash cans for their customers because the ones on the lot belong to the defendant(s). **See Exhibit C – 4 as evidence and proof of the same.**
46. On 01/01/2023 plaintiff did send payment of $1350.00 to defendant(s). **See Exhibit D.**
47. On 01/03/2023 plaintiff did send payment of $450.00 to defendant(s). **See Exhibit D – 1.**
48. On 01/08/2023 at 12:43 PM, defendant(s), Khari, asked in the group chat, for owners to park off the lot and use the DOT lot until they are told not to. **See Exhibit C – 5 as evidence and proof that defendant(s) asked plaintiff(s) and other vendors to break a state law.**
49. On 01/12/2023 at 11:29 AM, through the group chat, defendant(s) Derek Nobles, told all vendors that the waste water would be picked up on a weekly basis. **See Exhibit C – 6 as evidence of defendant(s) statement to plaintiff(s) and other vendors that the grey water tank and dumpster would be emptied on a weekly schedule.**
50. On 01/23/2023, plaintiff, HAZEL, sent $250.00 and asked the defendant(s) how would they wish to proceed in leu of the circumstances, there was no reply. **See Exhibits H – 4 as evidence and proof that defendant(s) consented with knowledge to the plaintiff(s) actions and the resulting modifications to the agreement and D – 2 as evidence and proof of the same after their acceptance of the payment proceeding to not evict / discontinue lease agreement.**
51. On 01/24/2023, defendant, Derek Nobles, did in fact modify the payment terms of the FOOD TRUCK GROUND LEASE AGREEMENT with the consent of the plaintiff, and did receive and accept $200 against deposit balance. **See Exhibits H – 6 as evidence and proof of the right of plaintiff(s) to accept that defendant(s) course of performance relating to the accepting of late and or partial payments as a waiver of the right to evict or cancel lease for failure to perform / satisfy payment in a timely fashion and Exhibit D – 3 as evidence and proof of the same resulting from the acceptance of the payments by the defendant(s).**
52. The modification is as follows: It was agreed that plaintiff would satisfy the remaining balance for the deposit by paying extra amounts on the monthly rent until the lease ended.
53. On 01/27/2023 at 11:42 PM, Derek announces that they **(BAYRIDERS WATERSPORTS, LLC)** are not required to provide any place where waste water is to be

Cause of action for relief from conspiracy against liberties and the right to freedom of industry absent being compelled to enter into a contract for services under the color of law and contrary to treaty law and other international agreements.

disposed of. **See Exhibit C – 7 as evidence and proof that defendant(s) do not have to provide the service of emptying a waste water tank even though they are a "food court" according to state records.**

54. On 02/17/2023 at 11:30 AM, plaintiff HAZEL, spoke with both Khari and Derek about a previous food inspection issue that resulted from waste water not being serviced.
55. During this conversation on Line 54, Derek says that he was not sure why there was any issue and presented plaintiff with the opportunity to speak with waste water company.
56. On 02/17/2023 at 11:37 PM, plaintiff confirmed with waste water company that per Derek Nobles the services were to be on a as needed basis, i.e. only when he calls.
57. During the conversation on Lines 54 – 56, plaintiff did question Derek's motivation for his actions; he replied, "Well I was trying to save you guys money by doing it this way, plus if you're using your sink correctly we wouldn't need them here on a weekly basis."
58. During the conversation on Lines 54 – 57, plaintiff, let Derek know that this is unacceptable and that the weekly pick up is what they are paying for; she then asked the representative to change the service intervals to weekly and Derek gave his approval.
59. On 03/15/2023 plaintiff informed the defendant(s) about her tent and the workshops and Derek said a permit would be needed if she wanted to leave it up.
60. On 03/22/2023 at 6:37 PM plaintiff set the tent up and defendant(s) again said to take it down and that she needed a permit.
61. On 03/25/2023 at 8:09 PM, Mekie Embery, the wife of Khari, was appointed as a business manager through the group chat via Derek Nobles.
62. On 03/25/2023 at 6:38 AM plaintiff sent an email to City of Tampa regarding permits for the tent. **See Exhibit J as evidence and proof that a representative from the City of Tampa advised plaintiff(s) that no permit is needed for the tent in spite of defendant(s) unreasonable protests and objections.**
63. On 03/26/2023 at or around 9:30 PM , defendant, Derek Nobles, asked "Where are you going to park your trailer?", then he informed the plaintiff that he would not be renewing the lease, shook hands and said nice doing business with you, and I was just giving you a heads up so you can start finding somewhere to go because he doesn't feel like renewing the lease.
64. On 03/27/2023 at 7:42 AM plaintiff, through email, received a reply from Dave Jennings who is responsible for permitting for tent / covered structure use within the City of Tampa and discovered that a permit would not be required. **See Exhibit J.**
65. On 03/27/2023, Dave Jennings, also confirmed, via email, that the tent can be left up overnight and for at least three (3) to four (4) days. **See Exhibit J.**
66. On 03/27/2023 at 7:56 AM plaintiff forwarded a screenshot of the email into WHATSAPP for defendants.
67. On 03/27/2023 at 8:14 AM, defendant, Khari Embery, says they are in the Hillsborough county, i.e. unincorporated Town n Country and not the City of Tampa.
68. On 03/27/2023 at 8:27 AM plaintiff asked for clarification to which no reply was received.
69. On 03/27/2023 at 9:01 AM plaintiff forwarded Khari a list of all of the people that were contacted about the permit, along with a screenshot of the email from Miguelina Rodriguez, the administrative assistant to Hillsborough County Fire Rescue, she says that no permit

Page 6 of 13

Cause of action for relief from conspiracy against liberties and the right to freedom of industry absent being compelled to enter into a contract for services under the color of law and contrary to treaty law and other international agreements.

was needed for a tent that is smaller than 900 square feet. **See Exhibit K as evidence and proof of the same.**
70. On 03/27/2023 at 10:02 AM, Khari texted as follows: *"Good job again. Yes, tampa is in Hillsborough County. But this location is not in tampa. It is only in Hillsborough county. The city of tampa has no jurisdiction here. Always contact the county about this location. Thanks for the info. Yep, all good. Put that tent up."* **See Exhibit H – 5 as evidence and proof that defendant(s) told plaintiff to put up the tent.**
71. On 03/29/2023 at 11:52 AM, defendant(s), Derek calls plaintiff and says that he is there with Code Enforcement agent and the alleged agent gets on the phone and says the tent must come down, he gave no name, no credentials, and was in a hurry and left the line [Phone call lasted 3 minutes and 49 seconds.].
72. On 03/29/2023 at or around 9:23 PM the food truck next to plaintiffs needed assistance because the breaker went out while working on a customer's order.
73. On 03/30/2023 at 6:35 PM, Mekie Embery, the wife of Khari, aggressively advised plaintiff to take down tent, says that contract was breached, asked about her lot size, and claimed they (defendant(s)) have no idea what she does there.
74. On 03/30/2023 plaintiff informed Mekie Embery that her partner and legal counsel would be available to speak later tonight because she (Mekie) says plaintiff(s) was violating the lease, the defendant(s) failed to stay around until the plaintiff's partner arrived.
75. On 03/30/2023 plaintiff and another staff member were removed from the Group Chat even though, she is still within the lease period and had not consented to any terms of covenant 27 of the FOOD TRUCK GROUND LEASE AGREEMENT. **See Exhibit C – 8 as evidence and proof that defendant(s) did act discriminatory by removing plaintiff(s) from group chat even though her lease was still enforceable and without any notice.**
76. On 03/31/2023 at or around 9:30 PM plaintiff received a "NOTICE OF NON-RENEWAL OF LEASE" from defendant(s). **See Exhibit L.**
77. On 04/01/2023 plaintiff attempted to begin her day and, as a result of certain stresses began having chest pains and checked into the local emergency room.
78. After experiencing the health concerns plaintiff feels and is aware that she is being harassed and or bullied by the plaintiff which is exacerbating her overall health and financial situation.
79. Defendant(s), as of 04/07/2022, advertise through google as Tampa Sandbox: Food Court, Dine-In, Curbside pickup, address 9024 W Hillsborough Ave, Town 'n' Country, Florida 33615, (813)557-2291. **See Exhibit B – 2.**
80. Per covenant 35 of the FOOD TRUCK GROUND LEASE AGREEMENT, the defendant(s) as the Lessors agreed to permit the quiet enjoyment of the premises. **See Exhibit A.**
81. Per covenant 15 of the FOOD TRUCK GROUND LEASE AGREEMENT, defendant(s) as the Lessors agreed to cross market with plaintiff(s) by circulating their menus. **See Exhibit A.**
82. Per Schedule 1 of FOOD TRUCK GROUND LEASE AGREEMENT, defendant(s) as the Lessors consented (permitted) to the site being used "…to cook and prepare foods and drinks.". **See Exhibit A – 1.**

## V.    POINTS OF LAW AND FACTS TO SUPPORT THE CAUSE OF ACTION

83. **NOTE BY THE DEPARTMENT OF STATE – Pursuant to Public Law 89—497, approved July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)**— ". . .the Treaties and Other International Acts Series issued under the authority of the Secretary of State shall be competent evidence . . . of the treaties, international agreements other than treaties, and proclamations by the President of such treaties and international agreements other than treaties, as the case may be, therein contained, in all the courts of law and equity and of maritime jurisdiction, and in all the tribunals and public offices of the United States, and of the several States, without any further proof or authentication thereof."
84. The State of Florida admits through **Fla. Stat. 90.902** that treaties, acts of the several State legislatures, and foreign documents are to be received as self-authenticating to its citizens and corporations.
85. According to International law the defendants are or represent domestic trust of the United States pursuant **C.F.R. § 301.7701-7.**
86. Said FOOD TRUCK GROUND LEASE AGREEMENT was valid and enforceable prior to plaintiff discovering that she was being singled out for speak up in front of the other vendors about the legalities of being compelled to purchase items that are supposed to be on a lot that solicits leases to food trucks.
87. By the act of presenting a contract for the rental / lease of property to be used by the plaintiff the defendant(s) consent to being governed under the laws of tenancy and the prohibitions which forbid making false claims, misrepresentations, theft of monies through fraud or coercion, and retaliation against renters / lessees.

### COA FOR DEPRIVATION OF RIGHTS UNDER THE COLOR OF LAW.

88. Defendant(s) actions confirm that they in fact did conspire to injure, oppress, threaten, or intimidate plaintiff(s) and other vendors in the Tampa territory in the free exercise and enjoyment of right to enterprise and due process under the law, inclusive of the privileges secured by the Constitution or laws of the United States.
89. By alleging that the plaintiff must remove the tent, even after she verified whether or not a permit was needed is a violation of the due process agreed to by defendant(s), under covenant 17 of FOOD TRUCK GROUND LEASE AGREEMENT, in terms of cooperating with plaintiff to provide necessary documents to obtain said licenses, permits, and approvals. **See Exhibit A.**
90. Plaintiff using a tent that does not require a permit and in compliance with laws on the premises was a protected right according to covenant 14 of FOOD TRUCK GROUND LEASE AGREEMENT that defendant(s) attempted to hinder, interfere with, and or prohibit without reason. **See Exhibit A.**

### COA FOR RETALIATION BY LANDLORD

91. Plaintiff was acting in good faith while exercising her rights under federal, local and state laws governing commercial leases when she initially objected to (1) buying tables for the lot, (2) buying port a potties for the lot, (3) buying trash cans for the lot, (4) being asked

to "chip in" (pay for) fresh water tank and waste water tank, (5) seeking a permit for her tent, (6) rent increases for services that the county requires landlords to provide, specifically water and sewage, (7) rent increases for services that were alleged to be included in the monthly rental cost of $1,000.00, (8) waste water not being serviced in a timely manner so as to avoid failing future inspections.

92. On 03/30/2023 the plaintiff was acting in good faith while exercising her rights under federal, local and state laws governing commercial leases when she asked that defendant(s) speak with her and business partner regarding any breaches of the lease agreement.
93. Plaintiff and her staff member being removed from the group chat even though the lease is still valid and after several unlawful interactions with defendant(s) was retaliatory conduct by defendant(s).
94. Plaintiff receiving a "NOTICE OF NON-RENEWAL OF LEASE" from defendant(s) following the interaction with Khari's wife appears retaliatory in nature, especially seeing as how numerous opportunities to give such notice or evict according to the lease agreement were previously waived by the defendant(s).

## COA FOR FALSE ADVERTISING AND OR MAKING MISLEADING STATEMENTS

95. On the date of and or before the beginning of the lease, defendant(s) had knowledge of plaintiff's services and products per the website, logo, receipts for services, but chose to misrepresent said knowledge to a third party (Khari's wife) that eventually threatened and harassed plaintiff about her use of property.
96. On 01/12/2023 at 11:29 AM, defendant(s) Derek, did state that the waste water tank would be serviced on a weekly basis, but on 02/17/2023 this was discovered to be a misrepresentation of truth and fact to the detriment of plaintiff and other vendors.
97. On 01/27/2023 defendant(s) maintain that there is a distinction between the food truck vendors and the company BAYRIDERS WATERSPORTS, LLC in order evade responsibility for maintaining lot according to code enforcement standards, but uses the lot location / address on google to advertise for another company named **TAMPA SANDBOX FOOD COURT, LLC**, which essentially admits itself to be a food court.
98. On 03/29/2023 defendant(s) said that a code enforcement agent was on the premises about her tent and the requirement for a permit, none which could be substantiated by the agency charged with regulating and issuing out permits under local law.
99. To date defendant(s) are advertising to the public that the lot rent is $1,000 and includes water and utilities, and further alleges that rent may change based upon the size of the truck – as it stands the food trucks on the lot vary in size and all are being asked to pay $1,350 per month.
100. On the date of and or before the signing defendant(s) knew the vendors would not immediately be able to open after signing the lease because they had full knowledge that they themselves were not in compliance with local code enforcement to be able to host food trucks but solicited leases to plaintiff and other vendors anyways.

## COA FOR INTERFERENCE WITH QUIET USE OF PREMISES

101. The plaintiff as a lessee had every right to possess or use the property interfered with by the defendants.
102. The defendant(s) as a lessor did or an authorized representative did interfere with lessee's use of property.
103. The interference with enjoyment of leased premises was / is substantial, enough that it causes stress, the fuse box continues to blow, and lessee had to reroute wiring of the food truck after signing the lease.
104. The lessee had no knowledge that the leased premises could not be used for their intended purpose prior to signing.
105. The lessee had no knowledge prior to executing the lease of the conditions allegedly causing substantial interference with the use or enjoyment of the leased property.
106. The lessor's interference was not privileged by the law or any duty under the law.
107. The lessee did not abandon or lose the property under any form of due process recognized by the agreement or the laws of the state.
108. All interferences were caused by lessor or another party that claimed under or through the lessor, under title paramount to lessor, or that the lessor authorized or sanctioned of the interfering party.
109. The lessee has paid the rent and performed all other obligations under the agreement or that consented to by lessor for the satisfaction of the agreement pursuant Florida Statute 671.205.
110. The lessee has not waived any rights under the FOOD TRUCK GROUND LEASE AGREEMENT.

## COA FOR ADVOCACY OF ILLEGAL OR UNLAWFUL CONDUCT BY A LANDLORD

111. On 01/08/2023, defendant(s), Khari Embery, did ask, through the group chat, the food truck vendors to start prompting their customers to park on property that was illegal until the Department of Transportation tells them not to.
112. The statements of Khari Embery to the vendors are not protected speech by any means as said speech was being given to incite the vendors to violate the law.
113. Florida Statute 810.09(1)(a)1 prohibits the trespass in property other than a conveyance or structure, and Florida Statute 316.1945 prohibits parking in specified places that defendant(s) were obviously aware of and consciously advised plaintiff(s) and other vendors to solicit another cite as parking to their customers until the DOT says something about it.

## COA FOR THEFT OR EXPLOITATION

114. By and through the FOOD TRUCK GROUND LEASE AGREEMENT defendant(s) did obtain property by fraud, willful misrepresentation of future acts, and or false promises that could not have reasonably been foreseen by the plaintiff.
115. Defendant(s) had more than enough time to prepare the premises for use according to the law and the promises they made, for immediate use by the plaintiff

Page 10 of 13

Cause of action for relief from conspiracy against liberties and the right to freedom of industry absent being compelled to enter into a contract for services under the color of law and contrary to treaty law and other international agreements.

because there was at least two (2) weeks between the date the agreement was signed and the time to when the lease was to be effective on 12/01/2022.
116. Defendant(s) willfully induced the plaintiff and others to part with their time, resources, finances, and rights through misrepresentation of services that were either never performed and or cannot be verified as having been performed – example is the cross marketing guaranteed by defendant(s), no budget for marketing was ever introduced or substantiated to evidence any marketing from the defendant(s).

### CASE LAW IN SUPPORT OF THE CLAIMS MADE HEREIN
117. Persons are not the subjects of commerce, and not being imported goods, they do not fall within the meaning founded upon the constitution, of a power given to congress, to regulate commerce, and the prohibition of the states for imposing a duty on imported goods. **Ibid; Gibbons v. Ogen 9 Wheat 1; 5 Cond. Rep. 562.**
118. It has long been established that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." **Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion) (citing New York Times Co v. United States, 403 U.S. 713(1971)).**

## VI. CHARGEABLE CRIMINAL OFFENSES UNDER STATE AND OR FEDERAL LAW
119. Florida Statutes 812.012(c) prohibits obtaining property by fraud, willful misrepresentation of a future act, or false promise by any person.
120. Defendant(s) conspired to injure, oppress, threaten, or intimidate the plaintiff from enjoying the right to enterprise and to enjoy the use of premises as advertised to the public in violation 18 U.S. Code §241.
121. Defendant(s) threatening actions were willful, intimidating and did interfere with plaintiff being able to participate in and or enjoy the benefit of due process under the law, the services as advertised by defendant(s), and the privilege of enterprising and other associated activities provided or administered by the United States, in violation 18 U.S. Code §245(b)(1)(B).
122. Defendant's concealment of facts and making false statements or misrepresentations pursuant 18 U.S. Code 1001(a).

## VII. REQUESTED RELIEF
123. Pursuant Lines 27 to 122 and in accordance with Florida Statute 83.55 that this court recognizes that plaintiff is with the right of action for damages as stated herein.
124. Pursuant Lines 27 to 122 that this court recognizes that based upon the terms of the defendant(s) original advertisement, they actually owe plaintiff money (refund of about $500.00).
125. Pursuant Lines 27 to 122 that this court recognizes that the defendant(s) on multiple occasions attempted to interfere with the plaintiff's right to the quiet enjoyment of the premises contrary to the contract and the law when they alleged that local code enforcement demands that she apply for a permit to have a tent up on the lot.

Case 8:23-cv-00973-WFJ-TGW   Document 1   Filed 05/04/23   Page 12 of 13 PageID 12

126. Recognition from this court that before filing this action for damages under Fla. Stat. 772.11(1), the plaintiff claiming injury did make a written demand for at least $15,000.00, the treble damage amount of the person(s) liable for damages under this section, totaling $60,000.00 / sixty-thousand dollars and zero cents. **See Exhibit E as evidence and proof that defendant(s) were given notice of the claims prior to filing in any court or tribunal and also Exhibit I as evidence and proof of the date of service by United States mail to the defendant(s).**

127. Pursuant Lines 27 to 122 that this court recognizes that a valid lease agreement existed between the parties whereby an act or a failure to act by the defendant(s) that substantially interfered with the plaintiff's use or enjoyment of the leased premises in such a manner that the lessee abandoned, or lost the use of, part or all of the premises.

128. Pursuant Lines 27 to 122 defendant's concealment as warranting fines in the amount $75,000 against each of the defendant(s), totaling $300,000.00 / three-hundred thousand dollars and zero cents.

129. Pursuant Lines 27 to 122 that this court recognizes that defendant's concealment and misrepresentation is fraudulent and criminal warranting imprisonment for defendants Khari Embery and Derek Nobles for up to 10 years or at least 4 years and 364 days.

130. Pursuant Lines 27 to 122 that this court recognizes that plaintiff has proven by clear and convincing evidence that they have been injured in a fashion by reason of any violation of Florida Statutes 812.012-812.037 or s. 825.103(1) to maintain this cause of action and secure relief for $15,000.00, which is threefold the actual damages sustained pursuant Florida Statute 772.11(1).

131. Pursuant Lines 27 to 122 and in accordance with federal, state or local laws any and all other relief that a court of competent jurisdiction may grant.

132. Pursuant **Exhibit F**, which is evidence and proof of a reply from the defendant(s) after being given notice of the claims for relief, and this court must recognize that the defendant(s) have consented to resolving this matter absent any form of settlement.

**By affixing my seal hereto, I, Mother Raguel Marie Bizaretty Bey, formerly known as HAZEL MARIE CAMARGO [Tradename / dba], a Moorish–American National, do hereby declare and affirm under the penalty of perjury under the laws of the Al'Maurii Khan Nation, that the foregoing statements and claims are true and correct to the best of my knowledge and belief and are not made for any illegal or unlawful reasons, nor to evade any duty or obligations established under the supreme law.**

Date: 5/2/2023

By: *Mother Bee*
Mother Raguel Marie Bizaretty Bey
Authorized Representative
All Substantive Rights Reserved

**INSTRUCTIONS TO THE DEFENDANT(S):**
(1) In order to perfect Proof of Service of your reply you MUST write the mailing location exactly as shown below. Please timely forward all / any replies and or responses to the claims herein to the following mailing location:
AL'MAURII KHAN TRIBAL NATION / JSAAJC (NAICS 92115)
Ex-relatione: Mother Raguel Marie Bizaretty Bey

Page 12 of 13

Cause of action for relief from conspiracy against liberties and the right to freedom of industry absent being compelled to enter into a contract for services under the color of law and contrary to treaty law and other international agreements.

**C/o 2780 East Fowler Avenue, PMB #236**
**Tampa, Florida republic, ZIP-CODE EXEMPT**
**Indian Country 18 USC 1151, 1152 / Northwest Amexem, North America**

(2) Failure to timely reply and or failure to write the mailing location as described above means that you will be considered to have waived your right to any defense against the claims in this matter and accept that a lien may be filed against you and your property, and that a default judgement and or summary judgement may be filed against you for willful failure to properly respond.

(3) These are your rights, please govern yourselves accordingly.

Page 13 of 13

Cause of action for relief from conspiracy against liberties and the right to freedom of industry absent being compelled to enter into a contract for services under the color of law and contrary to treaty law and other international agreements.